UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEFENSE INDUSTRIES, INC.                        CIVIL ACTION

VERSUS                                          NO: 14-0913

DAVID HEIM                                      SECTION: "A" (5)

ORDER AND REASONS

Before the Court is a **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 49)** filed by defendant David Heim ("Heim"). Plaintiff Defense Industries, Inc. ("Plaintiff") opposes the motion. The motion, set for submission on October 7, 2015, is before the Court on the briefs without oral argument. For the reasons that follow the motion is **GRANTED**.

I.   **Background**

This matter arises out of the alleged sale and retention of profits by Heim of commercial heavy-duty mats ("the mats") in violation of an agreement with Newt Reynolds, whom Plaintiff alleges was acting as its agent at all relevant times. (Rec. Doc. 1-1, Compl. at ¶¶ 8-9). The mats at issue were located in Alabama, and Heim later moved some to Arkansas.

Heim is a domiciliary of Arkansas. He and his company, GFI, Inc. (also located in Arkansas), are in the business of manufacturing temporary runways, landing pads, roads, and other such infrastructure components. (Rec. Doc. 10-2, Affidav. of David Heim at ¶¶ 2-5). Heim has no offices, residences, property, or employees in Louisiana, and he does not regularly conduct or solicit business in Louisiana. (*Id.* at ¶¶ 6-8). He has made one business trip to Louisiana, which he claims is unrelated to the transaction at issue. (*Id.* at ¶¶ 14-15).

Newt Reynolds is the former president of M & A Supply, Inc. ("M & A"). In that capacity Reynolds contacted Heim, and they arranged a meeting in New Orleans that took place in the fall of 2008. (Rec. Doc.

1

10-2, Affidav. of David Heim at ¶¶ 9-11; Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶ 1).[2] According to Heim, this meeting pertained only to a possible contract unrelated to the present action, in which GFI would manufacture products for M & A to sell in China – an idea that was never finalized in an agreement. (Rec. Doc. 10-2, Affidav. of David Heim at ¶¶ 11-13). In spite of Heim's contention that no discussion concerning the mats at issue in this case took place until initiated by M & A in 2010, both Reynolds and another individual, Alan Davis,[3] who were present at the New Orleans meeting assert that the existence of the mats at issue and their storage in Alabama came up at that meeting. (Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶1; Rec. Doc. 22-3, Affidav. of Alan Davis, at ¶2).

The parties do not dispute that the mats then were not discussed until sometime in 2010. (Rec. Doc. 10-2, Affidav. of David Heim at ¶¶ 14-19; Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶¶ 1, 4). They also do not dispute that all communications other than the 2008 meeting took place by phone or email. *Id.*

On November 18, 2008, M & A filed for bankruptcy in the Eastern District of Louisiana. (Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶2). It is unclear at what point Heim became aware of the bankruptcy proceedings or any of its related, relevant actions (*e.g.*, sale of M & A's assets to Plaintiff).

In 2010, Heim and Reynolds agreed that Heim would pay the storage fee to the facility in Alabama and in return would take possession of the mats and transport them back to Arkansas. Heim characterizes this agreement as one to purchase the mats and claims that M & A first initiated the contact. (Rec. Doc. 10-2, Affidav. of David Heim at ¶¶ 16-18). Reynolds on the other hand claims that Heim contacted him about the mats, and they agreed that Heim would "pay the storage fees to the warehouse in Alabama, take

---

[2] Although Plaintiff does not directly admit Newt Reynolds initiating the contact, it does not dispute Heim's characterization that M & A first contacted him. *See, e.g.*, (Rec. Doc. 22, Opposition at 1) (noting only that "Defendant met with Newt Reynolds . . . in New Orleans").

[3] Alan Davis "worked as a consultant to help M and A Supply liquidate assets to satisfy some of M and A Supply's unsecured debt." (Rec. Doc. 22-3, Affidav. of Alan Davis, at ¶3). It is unclear from the pleadings however if he was already serving in this role at the 2008 meeting, as one pleading notes the meeting took place in October 2008 but that the filing for bankruptcy did not take place until November of 2008. *See* (Rec. Doc. 22, Opposition at 1-2).

possession of the mats, attempt to sell them, and receive a portion of the sale as a commission." (Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶4).

It is undisputed that Heim and Reynolds traded several emails in 2010 and 2011 about the logistics of picking up the mats, potential clients for the mats, and later, arguments about ownership of the mats. It is also undisputed that Heim sent two checks to Alan Davis in Louisiana, which Davis then took with him to Mobile, Alabama, to pay the storage facility fee to get the mats released. Heim also picked up at least some of the mats in Alabama and transported those mats back to Arkansas.

Plaintiff's connection to this sequence of events is less clear. As previously noted, M & A filed for bankruptcy in November of 2008, and at some point thereafter Plaintiff purchased assets of M & A, including the mats at issue.[6] (Rec. Doc. 22-1, Affidav. of Newt Reynolds at ¶2). The exact relationship, if any, among Plaintiff, M & A, Newt Reynolds, and Alan Davis, is not clear from the pleadings or record document evidence. Plaintiff's Complaint alleges that Reynolds was acting as its "authorized agent." However, neither Reynolds' affidavit nor his communications with Heim that are entered into the record clarify this relationship.

## II. Discussion

Plaintiff relies on specific personal jurisdiction, not general jurisdiction. (Rec. Doc. 22, Opp. at 5). The Court therefore limits its consideration to specific personal jurisdiction.

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod.*

---

[6] The Opposition brief places this sale as occurring on June 29, 2010. (Rec. Doc. 22, Opp. at 2).

*Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees. *Id.*

Specific jurisdiction requires a plaintiff to show that 1) there are sufficient, *i.e.*, not random, fortuitous, or attenuated, pre-litigation connections between the non-resident defendant and the forum; 2) the connection has been purposefully established by the defendant; and, 3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. *Pervasive Software*, 688 F.3d at 221. It is now well-settled that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The "minimum contacts" inquiry is fact-intensive and no one element is decisive. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone is whether the defendant's conduct shows that he could "reasonably anticipate being haled into court." *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The defendant must not be "haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (quoting *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)).

At this stage the plaintiff need only establish a prima facie case of personal jurisdiction. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). The Court must also construe all disputed facts in the plaintiff's favor. *Id.*

### a. Contractual claim

Plaintiff argues that the above facts indicate that Heim purposefully directed his activities at Louisiana and that the claims arise from those activities, and thus Heim could reasonably anticipate being haled into court in Louisiana. Heim responds by arguing that these contracts are not attributable to this action brought by Plaintiff, but even if they were, they are too attenuated to support such an action. Heim asserts that simply entering into a contract with a party in the forum state is not sufficient to give rise to personal jurisdiction.

4

First, as Heim notes, personal jurisdiction cannot rest merely on the fact that a party has contracted with a resident of the forum. *Holt Oil & Gas Corp. v. Harvey* ("*Holt Oil*"), 801 F.2d 773, 778 (5th Cir. 1986) (citations omitted). This maxim precludes the use of an exchange of communications and a transmission of payments to the forum state without more as the basis on which to establish personal jurisdiction. Stated differently, specific personal jurisdiction cannot rest on only "the mere fortuity that [the plaintiff] happens to be a resident of the forum." *Holt Oil*, 801 F.2d at 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

Here, Heim emphasizes that the communications among himself, Reynolds, and Davis discussing the formation of the contract, its logistics, and the potential sale of the mats are insufficient to establish jurisdiction as they were to be picked up from storage in Alabama, relocated to his domicile in Arkansas, and sold from there.

In *Freudensprung v. Offshore Technical Services*, the Fifth Circuit faced a case in which a seaman injured on a barge in Nigerian waters sued the Texas-based staffing company with whom he signed his work agreement, Offshore Technical Services, Inc. ("OTSI"), and the Panamanian-based owner of the barge on which he was injured, Willbros West Africa, Inc. ("WWAI"), in a Texas federal district court. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 332-33 (5th Cir. 2004). The court found that the facts "do not indicate that WWAI intended to avail itself of the privilege of doing business in Texas." *Freudensprung*, 379 F.3d at 344-45. The court found this even though WWAI contracted with OTSI, the Texas-based company; WWAI contemplated arbitration that would take place in Texas; WWAI initiated a "long-term business relationship" with OTSI; WWAI had several communications with OTSI in creating and undertaking the terms of the contract; and WWAI wired payments to Texas. *Id.* Citing to other cases in which personal jurisdiction over a defendant was lacking despite a similar level of contacts, the court held that specific personal jurisdiction could not be extended to WWAI on these facts.[7]

---

[7]Although the Court also noted that the importance of the contacts was diminished by a choice-of-law provision implementing English law, this is not a decisive factor in such a consideration. *See Freudensprung*, 379 f.3d at 345. In *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1993), where similar or

Applying this precedent to the present case, the Court cannot find that it has personal jurisdiction over the contract claim of Plaintiff as the contacts are even less compelling. First, no evidence of a substantial relationship, and certainly not one contemplated or initiated by Heim, exists.[8] Although there is some evidence of the consideration of other ventures, there is no allegation that these ever came to fruition or involved the present cause of action. The contract at issue pertained only to offloading these mats. Second, Heim's 2008 trip to Louisiana does not help Plaintiff's argument, even assuming that the mats-at-issue were mentioned. Heim took this one trip at Reynolds' invitation and for the purpose of discussing an unrelated matter. *See Moncrief Oil Intern. Co. v. OAO Gazprom*, 481 F.3d 309, 313-14 (5th Cir. 2007) (finding the defendant's visit to the forum that was at the invitation of the plaintiff and did not give rise to the completed, disputed agreement insufficient to establish personal jurisdiction). Third, the entire performance of the contract under any alleged version, other than the unilateral activity of Reynolds, was to take place outside of Louisiana. *See Holt Oil*, 801 F.2d at 778 (finding that performance outside the forum diminishes the significance of other contacts with the forum). In short, taking into consideration the above contacts and considering that the contract pertained only to Heim taking possession of the mats in Alabama and transporting them back to his domicile in Arkansas, his connection with Louisiana is limited to the "mere fortuity" that Plaintiff (or Reynolds) is based there. *Holt Oil*, 801 F.2d at 778.

**b. Conversion claim**

Plaintiff also asserts that this Court has personal jurisdiction for the conversion claim in this case. The conversion claim consists of Plaintiff's allegation that Heim converted Plaintiff's property when he sold it without authorization. This claim relates to what Heim did after he took the mats back to Arkansas.

---

perhaps even more significant contacts took place between the defendant and the forum state, the court found that a choice-of-law provision *selecting the law of the forum state* still did not affect its conclusion that the court lacked personal jurisdiction over the defendant.

[8] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (finding a "20 year interdepedent relationship Rudzewicz established with Burger King's Miami headquarters" to be such a relationship).

While in some cases a tort committed outside the forum can support jurisdiction, the Court finds that is not true here.

"[A]n act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Bustos v. Lennon*, 538 Fed. App'x 565, 568 (5th Cir. 2013) (quoting *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). The Fifth Circuit has said that this type of jurisdiction is "rare" and that "the effects of an alleged intentional tort are merely part of the analysis of minimum contacts." *Id.* (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir.2008)). "Merely causing harm to a resident of a state is not sufficient, nor is the 'fortuity of one party residing in the forum state.'" *Id.* (citing *Stroman Realty*, 513 F.3d at 486; *McFadin*, 587 F.3d at 760). "Similarly, foreseeable injury in the state is not enough 'absent the direction of specific acts toward the forum.'" *Id.* (quoting *McFadin*, 587 F.3d at 760).

The Fifth Circuit has further found that when jurisdiction is based on the effects of an intentional tort, untargeted harm is insufficient, as is harm that only affects economic interests. *See Guidry v. U.S. Tobacco Co. Inc.*, 188 F.3d 619, 630 (5th Cir. 1999) ("The [defendants] are not charged with mere untargeted negligence endangering only economic or reputational interests. Rather, their alleged intentional and negligent tortious actions were knowingly initiated and aimed at users and potential consumers of tobacco products in Louisiana, including [the plaintiff].").

In *Bustos*, which involved a conversion claim, the court found that the facts were insufficient to support jurisdiction. *Bustos*, 538 Fed. App'x at 566. The court discussed the seminal Supreme Court case of *Calder v. Jones*, emphasizing that in *Calder*, the defendants authored a libelous story, "based on California sources, about a California resident, that resulted in harm within California." *Id.* at 568. Unlike in *Calder*, the *Bustos* plaintiff failed to offer non-conclusional allegations that the defendants intentionally aimed their harmful conduct at forum residents. *Id.* Further, the court found it significant that the defendants did not reside in the forum and the conduct at issue occurred outside the forum. *Id.* at 567.

7

Here, the Plaintiff asserts that Heim's conversion of the property had negative effects on the Louisiana-based owner of the property and the Louisiana bank who holds a security interest in the property. (Rec. Doc. 22). The Plaintiff asserts that the effects are seriously harmful because the property is worth more than $400,000 and that it was highly likely such a harmful result would come from Defendant's alleged conversion.

The Court finds that these effects, when considered with the lack of other contacts that Defendant has with the forum state, are not enough to establish personal jurisdiction. Like in *Bustos*, Defendant Heim does not reside in the forum state, and the harmful conduct occurred outside of the forum state. The harmful conduct did not relate to the forum, unlike in *Calder*, where the harmful conduct directly and specifically targeted a forum resident. Here, the conduct merely and incidentally caused harm to a resident of the forum state, and it caused only economic harm, which the Fifth Circuit has indicated is insufficient.

In sum, Plaintiffs have not established a prima face case of specific personal jurisdiction.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 49)** filed by defendant David Heim is **GRANTED**. Plaintiff's complaint is **DISMISSED** without prejudice for lack of personal jurisdiction.

New Orleans, November 20, 2015

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE